May it please the Court, I'd like to reserve three minutes for rebuttal. The issue before the Court today is whether the MSPB abused its discretion when it denied Mr. Finger leave to file his petition for review 14 days late. Instead of considering the applicable Alonzo Factor, Alonzo Factors, the MSPB engaged in a two-factor analysis of Mr. Finger's pro se status, which was mentioned but not analyzed, and the length of Mr. Finger's delay. Mr. Anderson, about 20 years ago, we took a case on bunk on the question of abuse of discretion to the Board, that they had so many appeals, and that we weren't in a position to determine all the factors, and therefore, we deferred to their discretion. Why is this extraordinary? How many cases have we reversed through the years on the use of discretion standard for late filing lack of good cause? Well, Judge Lurie, we can see that there's a deferential standard for review here. I believe the en banc case you're referring to is the Maggard case. No, it was not. I think it was probably Mendoza. Yes, sir. There have been at least eight or nine cases which were cited in my brief in which this Court has reversed the MSPB's initial determination of no good cause. Mr. Finger's not asking you to replace the MSPB's judgment here, but merely to reverse error where the MSPB failed to consider all the Alonzo factors. So the MSPB, instead of considering all the applicable factors, it collapsed it into this two-factor test in which it balanced Mr. Finger's pro se status and the length of his delay. What it and should have found ample good cause. For example, if they consider... Mr. Anderson, kind of returning a little bit to where Judge Lurie was, though, can we give them discretion in how to apply this test? Can that be part of the discretion that we give them? Yes, Chief Judge Rader. However, if they fail to apply the test, if they merely recite some of the factors and only apply less than all of the applicable standards, all the applicable factors, we believe that that's reversible error. Particularly here, the MSPB failed to consider excusable neglect. When Mr. Finger got the instructions, he read them carefully and he conflated as a pro se litigant, a lay person's reading of the instructions, he conflated the MSPB review with the Federal Circuit review. And he was confused about the deadlines and within his framework of understanding of what the deadlines were, he timely filed at the Federal Circuit and he believed he timely filed at the MSPB. Look, it's perfectly... What you're saying makes perfectly good sense. It doesn't look like he's off on a frolic, anything like that. The problem is that he's pro se and he gets some extra credit for being pro se. But if a pro se litigant is in front of a body and the rules are understandable, does he get cut that much slack? I think as long as he makes a reasonable mistake, if his excuse is... If he presents excusable neglect, this court in the recent Walsh case decided that when a petitioner received instructions that said, you must file within 20 days and include it at the end of the instruction... The instructions here were clearer than they were in Walsh. You have to agree with that. Well, Judge Wallach, I would posit that they were about the same level of clarity because at the end of the Walsh instructions, they included a set of regulations that defined days as calendar days and even included an example working out the deadlines. And the Walsh petitioner, proceeding pro se like Mr. Finger, was confused and he diligently filed his brief within his framework and understanding of what the deadline was. Now, help me picking up again on what Judge Wallach said. What is the amount of leeway that we ought to give to a pro se? I believe it's on a case-by-case basis, Chief Judge Rader. How do we judge that in this case? In this case, I believe that the MSPB should have placed itself in the shoes of a pro se litigant, reviewed the instructions and recognized that the infallible, recognized that there is room for confusion, and also counted all the other factors, the applicable factors, which were ignored or given short shrift by the MSPB. For example, Mr. Finger's pro se status, this court in Walsh described the distinction between calendar days and work days as a complex procedural hoop that... But that wasn't an issue here, was it? Whether it's calendar days or otherwise. Here he was what, two weeks late, 14 days? He was 14 days late. He was timely at the Federal Circuit, but he was 14 days late at the MSPB. He shouldn't have been at the Federal Circuit because the case was not final at the board. So that doesn't count. We definitely concede that he was not timely at the MSPB, but it's evidence that Mr. Finger was confused and was diligently trying to act within his framework of factors into the fact that his delay was minimal here. Should there be a different rule for pro ses without college education? How are we to pass that? I don't believe there should be a different rule for pro ses. I believe that the MSPB should put it, should give weight to a pro se status, not merely mention it and then summarily dismiss it. And you don't believe they did? I believe it was mentioned, but no analysis was given. The MSPB reading its own instructions determined that they were crystal clear and that nobody could possibly be confused. That was a professional reading of the instructions. They didn't put themselves in a lay person's perspective of how he would have read it. The instructions were crystal clear. How come the Department of the Interior was 22 days late? The Department of Interior was 22 days late, not regarding these instructions, Your Honor. Why were they? They offered no excuse. They offered no good cause. And that's another factor that I'd like to highlight for this court. This court has raised the broad equitable principles of justice and good conscience. And under that heading, the MSPB applied a double standard here. It allowed the Department of Interior to file its brief 22 days late. And this was a brief filed by professionals who knew the deadline, admitted that it was late when they filed it, and didn't seek leave in advance to file the brief late. The consequence is different. If a late brief is filed with permission, it just slows down the processing of that case. Whereas if we remove the discretion from the board, that opens the floodgates. There are thousands of employees, government employees, appealing to the MSPB. That has real consequence. Yes, it does, Your Honor. But we're not asking for a removal of the discretion from the board. We're just asking that the court apply the applicable Alonzo factors and the broad equitable principles of justice and good conscience. I mean, if the MSPB had done more than just list the factors and then only look at two of them and ignore the other applicable ones, then I believe we wouldn't be asking you to replace your judgment here. But the MSPB ignored those factors. They also ignored three other requirements that the They didn't serve initial discovery disclosures, and they didn't engage Mr. Finger in settlement negotiations. And they suffered no repercussions. They were allowed to repeatedly ignore requirements. And Mr. Finger, when he made one minor procedural error, had his case thrown out based on a technicality as opposed to the merits. This court has also pointed out that— Is the filing date a technicality? Filing date is not a technicality, but it's not to the merits. So the distinction this court has made is whether the MSPB makes decisions on the merits or on technicalities. And I would posit that missing a procedural deadline is a technicality compared to a merit. All close calls. What evidence do we have that Mr. Finger was diligent in his effort to pursue his rights? He didn't miss any other deadlines, Your Honor. As soon as he received notification that his petition for review was untimely, he promptly, within a week, submitted a motion to waive, and he explained all the reasons why he was tardy in his petition for review. He did do what he thought he was supposed to do, that is, come here and meet. He didn't know the difference between the courts, Your Honor. I've spoken to him. He was confused about the two. He thought that he was here in this case right now on the merits. If you look at his informal brief, it doesn't make any mention of his delay. He thought he was here on the merits. And when he filed his petition for review at the MSPB, that also stated petition for judicial review. He was confused. And he got even more confused when he received a letter from the MSPB that was filed here in this court stating that the case below was still pending for final adjudication. Again, a lay person's reading of that is going to be that when a case is pending for final adjudication, it had been accepted on the merits. He didn't understand that it was pending final adjudication of a motion to waive the 14-day time limit. And when the Federal Circuit received the MSPB clerk's letter, it sent a letter to Mr. Finger saying, you can't be in both courts at the same time. You've got to pick. And if you're dissatisfied with the MSPB, if you pick the MSPB and are dissatisfied with the MSPB, you can come back here to the Federal Circuit. So I don't believe that that was intentional. I believe it was an inadvertent situation in which the MSPB was notifying the Federal Circuit of a procedural defect. But the unintended consequence was that including the timely appeal filed here, Mr. Finger respectfully requests the MSPB to reverse the final determination denying him motion to leave. And alternatively, so that Mr. Finger has the ability to pursue his appeal in some venue, we respectfully ask this court to reopen its 2011 Federal Circuit appeal that was administratively dismissed. I'll reserve the balance of my time. Thank you, Mr. Anderson. Ms. Reardon. Good morning, Mr. Chief Judge and judges of the court. First of all, the only issue before the court today is whether Mr. Finger made a good cause argument regarding his late-filed appeal in the case that's before the court. Mr. Finger claimed to have been confused. However, if you look at the initial decision that was issued to Mr. Finger, and Mr. Finger has never claimed that he didn't receive the decision, and you look at the two sections, one section says, notice to the appellant, the initial decision will become final August the 9th unless a petition for review was filed by that date. It went on to say that this is an important date because... Are you saying he wasn't confused? I'm saying no reasonable person, lay person, pro se or otherwise, should have been confused because the message was clear. It clearly stated that it became final on August the 9th unless a petition for review was filed by that date. The last day you can usually file an appeal. If I were reading that word usually, wouldn't I think, well, that means there are some cases where it doesn't happen, and certainly my situation where I'm on vacation and I have some upsetting things occur, that will certainly be one of those The notice went on to explain, however, if you prove that you received the initial decision more than five days after the date of issuance, you may file a petition within 30 days after the date, so that is the exception. Nonetheless, when Mr. Finger filed his initial, his PFR with the board and filed with the court on the same date, I don't believe a reasonable person can claim to be confused because the... Is confusion a ground? Does confusion constitute good cause? Not in this instance. There are situations in which it may, but that is not what we have here because the language is clear. I can see on the situation where... In other words, if it's the board or the agency that provides inconsistent evidence, confusion there might be good cause. Yes, sir. So your position here rests on the supposed clarity of the notice. Yes, this notice is clear, and then we... The filings at the court and the board are called the same thing in your notice, so wouldn't he be confused as to which is which and didn't, as Mr. Anderson points out, didn't it seem to be that he was confused? No, as I said earlier, the section given the appeal right for judicial review is in a completely different section than the one filing with the board, and it says if you're dissatisfied with the court of appeals. And so any reasonable person reading that, and if you will notice, if you will look at the appendix at 111 and 112, Mr. Finger admits that he carelessly read the instructions because he said if he had the chance to reread the instructions, he probably would have known that it said you had to file. So the board said that just because he didn't read the instructions carefully, that is no reason to find good cause. And that's one of the reasons why the board did not find good cause. And I wanted to make a point... Why did they let the Department of the Interior file 22 days late? What was Interior's reason for doing that? I think they gave us... I'm not sure, Your Honor, but I think they gave us a reason, maybe press of work. However, we're talking about two different stages in the process. I understand that. The administrative judge has wide latitude in terms of conducting a hearing at the initial stage. And the administrative judge set time frames for the parties to bring in certain types of evidence. The administrative judge also wants to have a record from which that administrative judge can make a decision. The administrative judge made a determination that the evidence and the materials that the Department of the Interior submitted were needed in order for that administrative judge to make a determination and a decision. Now we move up to the petition for review stage. At that stage, that is something that the board has regulations for. The board has a regulation saying what time and the time particular time frame. And I don't believe he can make a valid claim that he was confused when he admitted that he did not read the instructions carefully. Did the Interior Department move for an extension of time to file its brief? They moved to file it late when they filed it at the time. And the administrative judge... Common procedure? Well, in some cases, yes, sir. In the government? The government is often late. I'm sorry, I didn't understand. The government is often late due to, as you say, the press of work. Well, I don't want to admit that the government is often late, but I will say that there are times when the press of work caused... The reason they gave was new evidence. Right. And sometimes... And they were never required to show good cause as to why they were late. They were never required to show what the new evidence was, were they? Well, it's not in the record. However, there's no evidence to show that the administrative judge did not know what that evidence was and the reason. It's just not characterized in the initial decision. Now, as to whether the administrative judge do, I'm not aware. We can only deal with the four corners of the record that we have before us. All I'm saying... But it seems, just looking at the record quickly, that the highly trained government attorneys are given a break without even a requirement of showing good cause and the pro se confused claimant here is cut off pretty quickly. Is there a disparity there? Well, no, sir. I don't think it is because if you look at the record in this case, Mr. Finger claims that he didn't have a chance, yet Mr. Finger arrived back home from his 14th. He had almost a month to either file something or call the board or find out what his rights were and his time frame. He made no effort to check with anybody. He just, after the fact, said that he was confused and he filed with the court and with the board. He had time to have filed a timely petition for review. Where does he admit that he didn't read it? If you look at a... I think you want to say carefully enough. I'm sorry, sir? I think you want to say carefully enough. Well, carefully enough. That's what he says is, I think I should have read it more carefully. If you look at the appendix at A11, he said the instructions on the initial decision left me with the impression that I needed to wait until the decision became final prior to review. I spent several weeks trying to locate the laws, etc. And he also talked about on the next page that he realized that the document was late. Had he not been out of town and caring for an injured friend, I would have been able to re-read, this is on 112, I would have been able to re-read the original document dated July 5th. And I would have either filed for an extension if I was unable to locate the appropriate laws or codes, or I would have filed for review with the board on time. And so I'm saying, he said if he wasn't out of town, he was in town and had time to re-read these instructions, and he failed to do so. He had almost a month from July 14th until August 9th to file a timely petition for review, which he failed to do so. And I don't believe the fact that the administrative judge gave the agency leeway to file documents that he needed to complete the record is comparable to the board requiring that a petition for review be timely filed. And on another point that was raised, that the board did not consider all of the items. The board has said on many numerous occasions that there are several factors that it considers. The board looks at the totality of the circumstances to make a determination as to whether an appellant has made a good cause determination for a late filing. Mr. Finger lists several cases in which the board gave 15 days, 50 days. He conveniently did not list the cases in which the board denied a petition for review and said that it was late, where the appellant was pro se, and it was only one day late. So that goes in favor of the board's determination that it looks at the totality of the circumstances. You can't look at just one item and say, OK, he's pro se, and regardless of the person's excuse, you're going to excuse a late filing. You look at everything that is said. That is why the board says that it looks at it on a case-by-case basis. Mr. Anderson admits that, that it's on a case-by-case basis. You look at what the person presents. You look at everything that is brought to bear in a case before the board makes a determination as to whether the person has proven that his petition for review was either timely filed or the petition for review on whether he made a good cause filing for the late filing. And we believe that Mr. Finger did not read. His pro se status did not prevent him from reading the instructions. And we also believe that his filing with the court, if you look at when he filed his motion, Mr. Finger filed his motion on September the 8th. We have quite a lot of case law that talks about if a delay is minimal. I didn't see that the board gave any consideration to whether this was a minimal delay. The board said it was not minimal. It did make the statement that it was not a minimal delay. And I think you look at the delay in the context of all the other circumstances surrounding the case. Did they give any reasons why it was not minimal or did they just say it's not minimal? Well, I'm sure the board has its reasons. If you look at a case and you give the board the authority to use its discretion to make a determination as to whether a person has made a good cause statement or has presented good cause evidence as to why something was late, I don't believe this court has in the would be sufficient for an appellant to make a good cause filing. It allows the board to use its discretion. The board may not, on occasion, go through 10 or 12 pages explaining all of its reasons. It said these are factors to be considered. When the board looked at the factors to be considered, they looked at the time Mr. Finger had to file his motion. They looked at the time Mr. Finger had to present his petition for review and found that he was late and found that he did not make a good cause filing. I don't know if it did not specifically say this is minimum or two days would be minimum or 15 days would be long term because you have to look at the number of days in the context of the circumstances surrounding it. I suppose, Ms. Rudin, that the real core question is whether the reviewing court, having a vague sense of unfairness or lack of fair play, can say that there's an abuse of discretion. That's what bothers me. Well, Judge Walling, I think there's sufficient evidence in the record to show, one, Mr. Finger arrived back home on July the 14th. He had until August the 9th to file his petition for review, which he failed to do. Mr. Finger admitted that when he said he could have re-read the instructions. He misread it. There's no question about that. And I think sometimes you misread things at your peril. And I do not believe Mr. Finger never said that he's incapable of understanding the English language. And so the fact that he did not read it properly, he did not read it properly at his own peril. And I believe that the board did not abuse its discretion when it found that although Mr. Finger was pro se, that he did not show good cause for the late filing of his petition for review. Thank you very much. Mr. Anderson, you have three minutes. The MSPB's entire case is predicated on the infallibility of the instructions at the end of the initial determination. They're imposing a standard upon Mr. Finger, which ignores his pro se status and says that it's virtually impossible for anyone who's reasonable and reads this to be confused. Your Honor, I believe that that's not the standard here. I think that if you look at it. I don't think that's what they say. They say, OK, he was confused. But he had the time to look at it more than once. And he didn't. That's the problem. The question isn't whether Mr. Finger had ample time. He read it, thought he understood it, and then operated under that assumption. And yes, if he were a professional, he probably should not be cut the slack. That a pro se litigant should be cut here. But couldn't he have called, asked? He could have if he knew that he was confused. But I mean, one doesn't call a court asking for clarification when you think in your mind that it's clear. So it's not a question of whether he had enough time to file this thing, which is what the MSPB seems to be focusing on as well. It's whether he was genuinely confused. And the MSPB attacks Mr. Finger's credibility. They admit at points in their brief that he was confused, but then believes that his confusion lacks credibility. And essentially, what the MSPB has done is collapsed the multi-factor Alonzo test into one factor, which they will accept. Factor number six, unavoidable casualty or misfortune. Excusable neglect is now no longer good enough reason, along with pro se status, the timeliness, the diligence, and the lack of prejudice to make a showing of- They don't have to discuss every factor, do they? I think they need to discuss the applicable factors, Judge Wallach. I think they should probably lay out all the factors and then discuss the applicable ones here. Excusable neglect, the fact that Mr. Finger was diligent throughout the proceedings, and the lack of prejudice were factors that are applicable but weren't considered. Mr. Finger did admit that he made a mistake in his motion to waive, but that's after the board pointed out to him that he was wrong. And he repeatedly, in his motion to waive, explained that he was confused. If you look, I'd also like to point out something that my co-counsel pointed out here was that the Department of Interior's excuse was that it had a lot of work. If you look at A-59, the agency says that it just received information that was not readily available, and the only information that the agency included were agency documents. Every single document that the agency cited and attached to its opposition was signed by the Department of Interior. They also claimed that the appellant never served the agency representative with a copy of his statement concerning jurisdiction, which somehow factored into the untimely response. That's because the agency never designated its representative, as it should have. If they designated the representative using, I believe, Form 30, Mr. Finger would have known where to mail it to. Instead, he mailed it generically to the agency at the address where he believed he had to send it. Your Honor, I believe that at worst, this is a close call, whether Mr. Finger's confusion provides excusable neglect or not, and good cause. And as this Court has pointed out, close calls should favor the petitioner, especially a pro se petitioner. The problem is there's also abusive discretion standard. This is tough. All right. Thank you very much, Mr. Anderson. Our next case is...